NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-287-KSF

ADRIAN GAMBRELL                                                                                    PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, *Warden*                                                        RESPONDENT

      Petitioner Adrian Gambrell is in the custody of the Federal Bureau of Prisons ("BOP"). He is confined in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington). Gambrell has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 [Record No. 2]. Gambrell has paid the $5.00 filing fee [*Id*.]. Stephen Dewalt, the warden of FMC-Lexington, is the named respondent in this action.

      Gambrell has also filed a "Motion for Temporary Restraining Order" [Record No. 3]. In that submission, he seeks expedited review of his § 2241 petition.

      This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

      As Gambrell is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Under 28 U.S.C. § 1915(e)(2), if a district court determines that the petition fails to establish adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Gambrell seeks an Order directing the BOP to place him in a Community Corrections Center ("CCC") as early as August 14, 2008. [1] Gambrell complains the BOP has designated only a thirty-day CCC placement for him, commencing on December 3, 2008. Gambrell alleges that Warden Dewalt has violated his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him for sooner placement in a CCC.

ALLEGATIONS OF THE PETITION

Gambrell was convicted of drug offenses in the United States District Court for the District of South Carolina (at Greenville). *See United States of America v. Adrian Gambrell, et al*, 6:03-CR-01092-6 (Hon. Henry M. Herlong, presiding). On March 3, 2005, Gambrell was sentenced to a 66-month term of imprisonment [*Id*., Docket Entry No. 221]. On March 14, 2008, Gambrel was re-sentenced pursuant to the provisions of 18 U.S.C. § 3582. His sentence was reduced to 53 months [*Id*., Docket Entry Nos. 821 and 825].

Gambrell states that his Unit Team at FMC-Lexington originally approved August 14, 2008, as the date of his release to a CCC. According to Gambrell's calculations, that date would have been 5.3 months prior to his release date and would have allowed him to spend a full ten-percent of his 53-month sentence in a CCC.

In his § 2241 petition, Gambrell states that several months prior to his presumed August 14, 2008, CCC release date, he was sanctioned for what he describes as two "minor rule

---

[1] CCC's are also known as "halfway houses" Prisoners near the end of their sentences are often placed there to live and work, under supervision, in order to facilitate their transition back into the community.

infractions" [Record No. 3, p.2]. Gambrell explains that the first infraction related to a tattoo and the second infraction related to taking one extra piece of chicken from the dining area [*Id*.]. Gambrell states that neither infraction resulted in either the loss of good-time credits or confinement in disciplinary segregation [*Id*.].

Gambrell states that on April 8, 2008, Warden Dewalt informed him that because of the two disciplinary infractions, his CCC release date would be deferred until October 3, 2008 [*Id*.]. According to Gambrell, this decision resulted in a net loss of 50 transition days, leaving him with only 93 days in the CCC, as opposed to approximately 150 days which he would have enjoyed under the August 14, 2008 transfer date [*Id*].

Gambrell further informs that Warden Dewalt took subsequent action to decrease the amount of time he would be allowed to spend in a CCC. Gambrell states that after the federal court in South Carolina reduced his sentence in March of 2008, he voluntarily withdrew from the 500-hour RDAP drug program.[2] Gambrell states that in light of his voluntary withdrawal from the RDAP program, Warden Dewalt then deferred his transfer to the CCC by another sixty (60) days, until December 3, 2008. [*Id*., p. 3].[3] Gambrell describes Dewalt's decision in this regard as retaliatory action based on "certain funding and budget csonsiderations."[*Id*].

---

[2] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. § 550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B).

[3] Gambrell states that he completed the mandatory "40-hour" RDAP program [Record No. 3, pp. 2-3].

3

Gambrell contends that he should be able to serve a full ten-percent of his sentence (5.3 months) in CCC placement, instead of only 30 days. Gambrell states that as soon as he is released, he must immediately find a job, locate a place to live, and support his two children. [*Id.*]. Gambrell argues that in order to accomplish these goals and attend to the needs of his family, he needs more than 30 days in a CCC.

Gambrell acknowledges that he has not pursued any of the steps required under the BOP's administrative exhaustion steps (filing a BP-9 with the Warden; filing a BP-10 appeal with the BOP Mid-Atlantic Regional Office; and filing a BP-11 appeal with the BOP Central Office). [4] Gambrell contends that completing that process would be futile and that he should be excused from pursuing the process.

## DISCUSSION

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v.*

---

[4]

Gambrell alleges that he has "consistently explained to the Unit Team and the Defendant [Warden Dewalt] that he has very serious needs that are best served by affording him as much RRC placement time as possible." [Record No. 3, p.3]. Gambrell does not indicate what form these explanations took, *i.e.*, whether he filed formal, administrative remedies or whether he had verbal conversations with these parties.

*Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The issue of whether to require exhaustion in a §2241 habeas proceeding such as this is not within the scope of the Antiterrorism and Effective Death Penalty Act ("AEDPA") or the Prisoner Litigation Reform Act ("PLRA"). Nor did the Supreme Court hold that failure to exhaust was not a violation of the PLRA, in *Jones v. Bock*, 27 S.Ct. 910, 920-21 (2007).

Rather, exhaustion is a judicially created requirement for §2241 petitions, and the Court may waive the requirement if it finds that exhaustion is futile. *See Davis v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995). Resort to administrative remedies is only futile if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16. Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a formal request for an administrative remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit the formal written complaint (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director within 20 calendar days of the date the warden signed the response; and finally, if dissatisfied with the response of the regional director, then he may submit an appeal (BP-11) to the office of the BOP's General Counsel.

The BOP's response times are established in 28 C.F.R. §542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

Gambrell seeks to totally short-circuit the BOP exhaustion process, alleging that he should receive emergency relief because there are only a few weeks remaining until August 14, 2008, the date on which he states that he was originally scheduled for pre-release custody. Gambrell admits that he learned as far back as April 8, 2008 (three months ago) that he was going to suffer a decrease in CCC transition time because of the existence of the two disciplinary infractions against him.

It appears that Gambrell knew a month earlier, in *March* of 2008 (four months ago), that Warden Dewalt was going to defer his CCC transfer date because of his withdrawal from the RDAP program. Gambrell states that as soon as his sentence was reduced, which was on March 14, 2008, he withdrew from the RDAP program. He states that the Warden acted on that information soon thereafter.

Gambrell did not, however, file this § 2241 petition until June 25, 2008. Thus, between March, 2008 and June 25, 2008, Gambrell could have begun, and completed, the three-step BOP administrative remedy process which takes approximately 90 days from beginning to end. Instead, Gambrell voluntarily ignored the BOP's exhaustion process and filed this § 2241 action, claiming that family needs justify excusing him from the process.

Accordingly, the Court is not inclined to grant the motion for expedited review. One of the reasons for requiring the exhaustion of administrative remedies is to prepare a record for the

6

Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). At this time, the current record is incomplete factually, a situation which would be remedied if Gambrell had first exhausted the BOP administrative remedy process. For that reason, the Court will dismiss the instant § 2241 petition without prejudice.

EVALUATION OF MOTION FOR TEMPORARY
RESTRAINING ORDER

Gambrell has claimed that he will suffer irreparable injury if this cause is not taken up now, rather than later. The Court construes his request as one for preliminary injunctive relief and finds that such relief is not warranted.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering the first factor in relation to this case - - Gambrell's likelihood of success on the merits - - the outcome is highly questionable at this stage for three reasons. First, as noted, the record is incomplete absent evaluation of the CCC placement issue by the Warden, the BOP Mid-Atlantic Office and the BOP Central Office.

Second, Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). Inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms, 459 U.S. 460 at 468, (1983).*

In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison (such as a CCC), security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995). Accordingly, the petitioner simply has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him.

Third, there is a federal statute, 18 U.S.C. § 3621(b), which governs the *place* of federal inmates' imprisonment. Summarized, this statute sets forth the criteria which the BOP must consider in making a determination as to where an inmate will serve his federal sentence. Section 3621(b) provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> > (1) the resources of the facility contemplated;
> >
> > (2) the nature and circumstances of the offense;
> >
> > (3) the history and characteristics of the prisoner;
> >
> > (4) any statement by the court that imposed the sentence--
> >
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> >
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

As noted, in this case, Gambrell has not attempted to exhaust either of the issues pertaining to earlier CCC placement despite having had an opportunity to do so. Gambrell has not even provided the Court with the Unit Team's response. It does not appear that Warden Dewalt has had an opportunity to consider the factors set forth in § 3624(c), and it is obvious that the two higher levels have not addressed the issue. For that reason, the Court will not at this time

9

counter the BOP's decision to limit Gambrell's tenure in a CCC to 30 days starting on December 3, 2008.

Additionally, pre-release custody is governed by 18 U.S.C. § 3624(c), which provides as follows:

> (c) Prerelease custody. - -
>
> (1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c).[5]

In *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), the Tenth Circuit addressed a similar claim by a federal inmate who demanded placement in a CCC earlier than the date set by the BOP. There, the court examined the earlier version of § 3624(c) and concluded that Wedelstedt's remedy was limited only to the BOP being required to *consider* him for a transfer

---

[5]  The legislative history of this provision reveals that the 2008 Amendments to this subsection are found in Pub. L. 110-199, § 251(a). That section was enacted on April 9, 2008, and is referred to as the "Second Chance Act of 2007." That legislation rewrote subsection (c) of § 3624, which formerly read as follows:

> "(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.".

18 U.S.C.A. § 3624.

to a CCC for the last ten percent of his sentence. *Wedelstedt*, 477 F. 3d at 1168. The relevant language from the *Wedelstadt* opinion reads as follows:

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.** .

*Id*. S*ee also Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (although the BOP has the *authority* to place a prisoner in an RRC or a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so).[6]

As to factor (2), Gambrell has alleged irreparable injury because of personal hardship on his two sons and his need to find employment once released from BOP custody. Sadly, incarceration causes adverse consequences on the family of the convicted person. The fact remains, however, that Gambrell was sentenced to serve a 53-month term.

As noted, Gambrell has no constitutional right to serve his sentence in a facility more to his choosing for any certain amount of time. *See Ogunyale v. Phillips*, 2008 WL 1820652 (N.

---

[6] *Elwood* states as follows:

> It [18 U.S.C. § 3624(c)] only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP **may** place a prisoner in a CCC for six months, or more. Under § 3624(c)) the BOP must formulate a plan of pre-release conditions. This plan **may** include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. **Likewise, the obligation is qualified by the phrase "to the extent practicable."** Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Elwood v. Jeter*, 386 F.3d at 846.

D. W. Va., April 22, 2008) (Slip Copy) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to have the BOP consider his application for CCC placement in accordance with the five factors set forth in § 3621(b)).

Finally, Gambrell alleges that he is being punished because he withdrew from the "voluntary" RDAP drug program and because he has been charged with two minor disciplinary infractions. Courts have considered the effect of a federal inmate's withdrawal from other BOP rehabilitative programs, such as the BOP's literacy program established in 18 U.S.C. § 3624(f).

In *Burrell v. Gunja*, 2001 WL 34713499 (D. Md., June 8, 2001) (Only Westlaw citation currently available), the prisoner voluntarily withdrew from the BOP literacy program, and therefore accrued GCT at a rate of 42 days per year instead of 54 days per year. The prisoner argued that he had a liberty interest in accruing GCT at a rate of 54 days per year. The court held that under 28 C.F.R. § 523.20(c)(2), the BOP was justified in awarding the prisoner with fewer days of GCT per year.

*Burrell* instructs that where a prisoner elects to withdraw from a rehabilitative program, the BOP is entitled to withhold benefits or refuse to confer privileges on the prisoner, even though the prisoner's refusal to participate in the program might not subject him to disciplinary sanctions. Here, the Court lacks full information as to the specifics of Gambrell's case (due to complete lack of exhaustion). The facts Gambrell has disclosed, however, would indicate that the BOP was acting within its discretion by awarding a shorter tenure in the CCC, given his withdrawal from the RDAP and/or a history of prison disciplinary infractions.[7]

---

[7] While Gambrell claims that the two infractions are minor, he attaches nothing from the BOP which would shed light on the severity of the offenses.

The Court finds that denying Petitioner Gambrell the emergency relief he requests now will not result in *irreparable injury*, which is the legal standard. Finally, as to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting where this prisoner will spend the rest of his federal sentence and for how long he will be at any location.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)  Petitioner Adrian Gambrell's "Motion for Temporary Restraining Order" [Record No. 3] is **DENIED**.

(2)  Petitioner Adrian Gambrell's petition for writ of habeas corpus [Record No. 2] is **DENIED** and this action will be **DISMISSED** without prejudice from the docket of the Court.

(3)  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This 11th day of July, 2008.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**